CV-16-E-8033-S

AO 243 (Rev. 01/15)

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District Alabama (Southern) | |
|---|---|---|
| Name *(under which you were convicted)*: Christine Staggs McKim | | Docket or Case No.: 2:08-cc-00313-IPJ-RRA-2 |
| Place of Confinement: FCI Aliceville | Prisoner No.: 27201-001 | |
| UNITED STATES OF AMERICA v. Northern District (Southern) | Movant *(include name under which convicted)* Christine Staggs McKim | |

**MOTION**

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

     Northern District of Alabama
     Hugo Black Court house
     1729 5th Ave N
     Birmingham, AL 35203

     (b) Criminal docket or case number (if you know): 2:08-cr-00313-IPJ-RRA-2

2. (a) Date of the judgment of conviction (if you know): 6-29-2009

     (b) Date of sentencing: 6-29-2009

3. Length of sentence: 5,400 months

4. Nature of crime (all counts):
     15 counts   18:2251(a) exploitation of children

5. (a) What was your plea? (Check one)
     (1) Not guilty ☐     (2) Guilty ☒     (3) Nolo contendere (no contest) ☐

     (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
     what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)     Jury ☐     Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☐     No ☒

8. Did you appeal from the judgment of conviction?     Yes ☐     No ☒

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 2 of 49

9.  If you did appeal, answer the following:
    (a) Name of court: _____N/A_____
    (b) Docket or case number (if you know): _____
    (c) Result: _____
    (d) Date of result (if you know): _____
    (e) Citation to the case (if you know): _____
    (f) Grounds raised:




    (g) Did you file a petition for certiorari in the United States Supreme Court?    Yes [ ]    No [ ]
        If "Yes," answer the following:
        (1) Docket or case number (if you know): _____
        (2) Result: _____

        (3) Date of result (if you know): _____
        (4) Citation to the case (if you know): _____
        (5) Grounds raised:




10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes [ ]    No [x]

11. If your answer to Question 10 was "Yes," give the following information:
    (a) (1) Name of court: _____
        (2) Docket or case number (if you know): _____
        (3) Date of filing (if you know): _____

        (4) Nature of the proceeding: _____
        (5) Grounds raised: _____

USCA11 Case: 16-14731   Document: 4   Date Filed: 07/11/2016   Page: 3 of 49

   (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐     No ☐

   (7)  Result: _____

   (8)  Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

   (1)  Name of court: _____

   (2)  Docket of case number (if you know): _____

   (3)  Date of filing (if you know): _____

   (4)  Nature of the proceeding: _____

   (5)  Grounds raised:

   (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

        Yes ☐     No ☐

   (7)  Result: _____

   (8)  Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

   (1)  First petition:    Yes ☐    No ☐

   (2)  Second petition:  Yes ☐    No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12.  For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

AO 243 (Rev 01/15)

**GROUND ONE:**   Ineffective Assistance of Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

see attached

Failure to communicate
Failure to negotiate a plea that benefit defendant
Failure to explain sentencing
Failure to investigate many aspects of the case

(b) **Direct Appeal of Ground One:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ☒

(2)  If you did not raise this issue in your direct appeal, explain why:

Ineffective Counsel. McKim was told that she could not appeal which is a violation of her Constitutional Rights.

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐     No ☒

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)  Did you receive a hearing on your motion, petition, or application?

Yes ☐     No ☐

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No ☐

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 5 of 49

AO 243 (Rev 01/15)                                                                                              Page 6

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):


_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:




_____

**GROUND TWO:**   Ineffective Assistance of Counsel_____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

```
Failure to investigate competency
Education level
Failure to bring out sentencing errors
```




_____

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐       No ☒


(2) If you did not raise this issue in your direct appeal, explain why:

```
Ineffective Assistance of Counsel. McKim was told that she could
not appeal which is a violation of her Constitutional Rights.
```

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐       No ☒

AO 243 (Rev. 01/15)

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐     No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:** Cruel and Unusal Punishment

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Unconstitutional Sentence
Mental Health
PTSD
Duress and Coercion

USCA11 Case: 16-14731   Document: 4   Date Filed: 07/11/2016   Page: 7 of 49

**(b) Direct Appeal of Ground Three:**

   (1)  If you appealed from the judgment of conviction, did you raise this issue?

      Yes ☐    No ☒

   (2)  If you did not raise this issue in your direct appeal, explain why:

      `Ineffective Assistance  of Counsel. McKim was told that she could`
      `not appeal which is a violation of her Constitutional Rights.`

**(c) Post-Conviction Proceedings:**

   (1)  Did you raise this issue in any post-conviction motion, petition, or application?

      Yes ☐    No ☐

   (2)  If you answer to Question (c)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed:

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available):

   (3)  Did you receive a hearing on your motion, petition, or application?

      Yes ☐    No ☐

   (4)  Did you appeal from the denial of your motion, petition, or application?

      Yes ☐    No ☐

   (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

      Yes ☐    No ☐

   (6)  If your answer to Question (c)(4) is "Yes," state:

   Name and location of the court where the appeal was filed:

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available):

AO 243 (Rev. 01/15)

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** Appeal Process

Ineffective Assistance of Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Failure to communicate for appeal

(b) **Direct Appeal of Ground Four:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐       No ☒

(2)  If you did not raise this issue in your direct appeal, explain why:

Ineffective Assistance of Counsel. Mckim was told that she could not appeal which is a violation of her Constitutional Rights

(c) **Post-Conviction Proceedings:**

(1)  Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐       No ☐

(2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐     No ☐

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐     No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐     No ☐

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

    McKim has not filed any motions

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the you are challenging?    Yes ☐    No ☒

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 10 of 49

AO 243 (Rev. 01/15)                                                                                     Page 11

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the
     you are challenging:
     (a) At the preliminary hearing:

     James L. O'Kelley 2001 Park Place North Suite 259 Birmingham, Al 3520

     (b) At the arraignment and plea:

     same

     (c) At the trial:


     (d) At sentencing:

     same

     (e) On appeal:


     (f) In any post-conviction proceeding:


     (g) On appeal from any ruling against you in a post-conviction proceeding:



16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court
     and at the same time?          Yes [ ]      No [xx]

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are
     challenging?          Yes [ ]      No [X]
     (a) If so, give name and location of court that imposed the other sentence you will serve in the future:



     (b) Give the date the other sentence was imposed:
     (c) Give the length of the other sentence:
     (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or
     sentence to be served in the future?          Yes [ ]      No [ ]


18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain
     why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

     See Attached

AO 243 (Rev. 01/15)                                                                                                    Page 13

Therefore, movant asks that the Court grant the following relief:

_____

or any other relief to which movant may be entitled.


_____

Signature of Attorney (if any)


I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion
under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ 4-22-2016 _____ .

                                                                                                (month, date, year)


Executed (signed) on _____ 4-22-16 _____ (date)


                                                                    Christone McKim
                                                                    Signature of Movant


If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

1.

United States

v                              case # 2:08-cr-00313-IPJ-RRA-2

McKim

ATTACHMENT TO MOTION 2255

Ground #1     Ineffective Assistance of Counsel

McKim's 6th Amendment Right was violated due to her lawyer's failure to investigate her case thoroughly. In order for her to be presented correctly to the Court a full investigation should have been done. Counsel must know all the facts before being able to make professional decisions and informed choices. This can only happen with proper investigation. McKim's counsel failed to do anything but have her sign a Plea Agreement. Strickland v. Washington 466 US 688 80 L.Ed. 2d 674,104 S. Ct. 2052 (1984). Representation of counsel entails certain basic duties. Counsels function is to assist the defendant, and hence counsel owes a client a duty of loyalty. Which counsel failed to do so. He failed to make a defense and a investigation. Geders v. US 425 US 80, 96 S. Ct. 1330 (1976). Counsel would have put in motions to gather her Departemnt of Human Resource files and see the abuse she went through and her background. Counsel would have seen the child she was. Counsel would have also found that her co-defendant was arrested for threatening to kill her. Counsel would have also found that her co-defendant has a violent background with previous felony charges. If counsel would have investigated and talked to the childrens doctor and seen that they were unharmed, never raped and they were healthy. Counsel failed to investigate McKims mental health. McKim was never given an evidentiary hearing to her knowledge.

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 13 of 49

2.

Counsel failed to communicate with McKim. She didnt understand
what was going on around her. Counsel failed to explain concurrent
and consecutive to her. Counsel never talked to McKim about a
lesser offense that she take. Wanatee v Ault 39 F Supp 2d 11643
(N.D. Iowa 1999). The ABA describes the obligation of defense counsel
in terms that no one could misunderstand in the circumstance. It is
the duty of the counsel to conduct a prompt investigation of all
circumstances of the case and to explore all avenues leading to
the facts relevant to the merits of the case. Counsel failed to do
so. Rompila v. Beard 545 US 374, 162 L Ed. 2d 360 125 S. Ct 2456(2005)
Mckim meets the Strickland's two prong test. McKim would not have
plead guilty intentionally and knowingly to 450 years. She was
mislead by her counsel. She was told that she would get 30 years
by her attorney. She would have gone to trial but because of the
misadvice of her counsel she took the plea. James v Cain 56 F. 3d
662 (CA 5 1995). Counsel failed to bring up the abuse in McKim's
childhood and the abuse she suffered while in the relationship
with the co-defendant. Maddox v Lord 818 F.2d 1058 (CA2 1987).
McKim primary arguments that here counsel unreasonably neglected
to investigate the affirmative defense of extreme emotional
distrurbance. McKim's prior history would have shown that she
had been under extreme emotional and physical distress for many
years actually most of her life. This changes a person's way of
responding to situations. Deluca v Lord 77 F3d 578 (CA 2 1996)
The District Court granted the petition on the grounds that
Deluca's counsel in her state court trial was ineffective in two
respects: first, in failing to adequately investigate, prepare for

3.

advise DeLuca of a possible defense based on extreme emotional
disturbance ("EED"); and second, infailing to advise DeLuca that
it was up to her to decide whether to testify in her own defense.
Counsel knew about McKim's being hospitalized for mental problems
so that alone without all the other emotional abuse that happened
after this hositalization would most definatly be grounds for any
competent counsel to question McKim's situation. None of these
serious issues were even brought up in Court. Counsel's job to
provide McKim a clear understanding of the law was not even attempted.

Ground #2

McKim completed 8th grade only and during these years she was
bounced from foster home to foster home. Her emotional maturity
was even less than 8th grade level. Competent counsel would have
been able to recognize this just by speaking with McKim. She was
a "Child" - mentally- emotionally-and physically. At the time of
her arrest she was 5'2" and 70lbs. Non of these serious factors
were ever brought out.

Ground#3

Counsel failed to explain and weigh the difference in
concurrent and consecutive sentencing. This should have been
specified in the plea but it was not. Beavers v Lockhart 755 F.2d
657 (CA8 1985)Beavers argues that cousel failed to raise the issue
of consecutive sentencing. During the thorough review of the case
it was found that the trial judge did not run the sentences
consecutively on the consideration of character or habits or prior
record. This case was vacated and remanded for the consecutive

4.

sentencing to be corrected and run concurrent. McKim has NO PRIOR
RECORD. The fact that her sentence was run consecutive is a complete
miscarriage of justice and a violation of more than one Constitutial
Right. Counsel told McKim that she would get 30 years if she signed
the plea. Who in their right mind would sign a plea for 450 years?
It is obvious that she was mislead or did not understand what was
going on. Counsel should have also gotten her counts consolidated.
A District Judge must explain the appropriateness of any unusually
harsh sentence with sufficient justifaction. The judge should consider
all of 18 USSC 3553 (a) sentencing factors to determine whether
they support the sentemce given. He may not presume the guideline
range is reasonable. Gall v US 352 US 38 169 L.Ed. 2d.445, 128 S. Ct
586 (2007). Abuse of discretion is shown in McKim's large sentence
due to FIRST TIME OFFENDER and non- career offender. Counsel failed
to argue that some counts were done on the same day not different days.
Prosecutorial misconduct was shown on McKim's case because they
withheld her mental and background history as evidence as well as
police reports on McKim's co-defendant. Brady v Maryland 397 US
753 (1970). Federal prosecutors are suppose to seek justice not
merely score convictions. McKims 8th Amendment was violated to
cruel and unusual punishment. McKim's sentencing is cruel and a
miscarriage of justice. Due to the duress McKim suffered by threats
and physical abuse by her codefendant she did not act of her own
free will. McKim was physically and emotionally hurt so severlly
that when co-defendant threatened to hurt her children, she believed
he would do it. She did whatever he told her to do, if not he would
beat her severly. Her co-defendant was arrested in Jessup, GA because

USCA11 Case: 16-14731   Date Filed: 07/11/2016   Document: 4   Page: 16 of 49

5.

he threatened to kill her infront of a hotel clerk which called the police. This and other records of the abuse were never brought in. McKim was in fear for her life and the life of her children. Co-defendant had made good on his promises to  hurt her all the time so she knew he would do it. McKim was taken away from everyone she knew. He saw a "child" even though she was 17 years old. Counsel failed to let the court know and understand the fear he installed in her. Counsel failed to file a motion for 5K2.12 for Coercion and Duress. Battered woman syndrome is a set of psychological and behaviorial reactions exhibited by victims of severe, long-term, domestic physical and emotional abuse. Once battered women believe themselves to be helpless victims of abusive men, they behave like hostages and link themselves to the captors out of fear that is the only way to survive.  Battered women are unable to respond effectively to violence because they are psychologically trapped in the violent relationship. Repeated beatings diminish the battered woman's motivation to respond and instill in her a negative belief about the effectiveness of her actions. This "learned helplessness" keeps a battered woman from leaving her batterer. One of the primary survival skills of battered women is hyperalertness. The Battered woman learns to be sensitive to her enviroment to prevent further violence to herself and her children. The development of survival skills, however, comes "at the expense of escape skills" L. Walker at 33 &87-89. Society often misinterprets the survival skills of a battered woman as signs of passivity and weakness couples with an unwillingness to leave the violent relationship. A common misunder-standing is that the battered woman's responses are indicative of

USCA11 Case: 16-14731   Document: 4   Date Filed: 07/11/2016   Page: 17 of 49

6.

weak character. Rather, these reponses must be seen as attempts
to cope with the abusive and controlling enviroment in which she
lives and from which she is helpless to escape.  Model Penal Code
which recognizes duress as a defense if the threat of the use  of
unlawful force is such that a person of reasonable firmness in her
situation would have been  unable to resist. American Law Institute
Model Penal COde 2.09(i)(1985); see also Grant 691,F.2d at 1161-62,n3.
It is also said " by the continued use of unlawful force, persons
effectively breakdown the personality of the actor, rendering her
submissive to whatever suggestions they make. They then, using neither
nor threat of force on that occasion suggest that she perform a
criminal act;and the actor does what they suggest."  Our own law
recognizes that for a substantial period of time a brutal man may
subject women to severe psycholgical stress such that they "fail .
to escape or cry out for help when in a public place because they
lacked sufficient ego strength, self-confidence and will power when
they were in the threatening shadow of the man's complete domination
over them." United States v Winters, 729 F.2d 602, 605(9thCir. 1984)
It was the government in Winters that relied on a psychiatrist's
testimony to amke this point. In other contexts, too, we have recognized
the "pattern, all too familiar, of a victim identifying with the
aggressor under conditions of terror." Lazo-Majano v INS, 813 F.2d
1432, 1434(9th Cir 1987). Accordingly, what is required is for the
fact-finder to determine whether, given the experience and psycholgical
make-up of this defendant, she feared to leave and oberyed from fear
the criminal who directed her conduct. McKim was given a psychological
evaluation on March 6 2009 which was three years after being arrested
and taken out of the abusive situation that she was in.

United States v. Bailey, 444 US 394, 409-10, 100 S. Ct. 624, 634,
62 L. Ed. 2d 575 (1980)  Under this defense, otherwise criminal
behavior may be excused under narrow circumstances. To succeed
with this defense, the defendant must show:  That the defendant was
under an unlawful and present, imminent, and impending threat of
such a nature as to induce a well-grounded apprehension of death
or serious bodily injury; 2. that the defendant had not recklessly
or negliently placed herself in a situation in which it was probable
that she would be forced  to choose the criminal conduct; 3. that
the defendant had no reasonable legal alternative to violating the
law; a chance both to refuse to do the criminal act and also to
avoid the threatened harm, and 4. that a direct casual relationship
may be reasonably anticipated between the criminal action taken
and the avoidance of the threatened harm. United States v. Liu
960 F.2d 449, 453 (5th Cir). McKim was in fear for her life and the
life of her children from the past and present trauma and abuse.
At 17 years old when she got with the 35 year old man she hadno
idea that he would be so abusive and cruel. She did not negligently
or rechklessly put herself in any situation. She was a child herself.
McKim did not have the mental, emotional, or physical way to get
away from this evil man. McKim's counsel failed completely in
showing the court any of the true facts of the case. Model Penal
Code 2.09 "Stark, tangible factors that were differentiated the actor
from another, like her size, strength, age, or health, would be
considered in making the exculpatory judgement". The fact that she
was 5' 2" and 70lbs along with a Heroin/ Cocaine addict, that was
supplied by co-defendant, should have been considered. Moreover,
a purely subjective element that cannot be taken into account in

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 19 of 49

8

sentencing. Federally, the Sentencing Guidlines specifically provide

for the possibility of downward departure "committed the offense

because of serious coercion, blackmail,or duress, under circumstnces

not amounting to a complete defense". USSG 5k2.12. The Commission's

Policy Statement on this guideline declares: " The extent of the

decrease ordinarily should depend on the reasonableness of the

defendants actions and on the extent to which the conduct would have

been less harmful under the circumstances as the defendant believed

them to be." The perception of the particular defendant thus must be

taken into account.

Ground #4  Appeal Process

McKim made an attempt to have her counsel file an appeal but

he would not answer the phone. The excessive unconstitutional

sentence that was given to McKim and an appeal should have been

entered.  Effective Counsel, which is a constitutional right, on

such a huge sentence would have recognized the fact that McKim was

not competent to amke any decisions including giving up her rights

in a plea. The fact that  she gave up any rights and still recieved

a Life sentnece of 450 years shows Ineffective Assistance of Counsel.

LIST OF CASES OF VERY SIMILAR NATURE

This shows the huge sentence disparity on McKims case.

Also attached is a letter from McKim in her own words which explain her history and some onf the abuse.

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 21 of 49

CASES OF SIMILAR NATURE

☆    United States v Julie Carr- 09-CR-193 (D. Me.  2011)

     (female defendant convicted of sexual exploitation of  child;
     defendant transmitted four webcam videos of two- year- old
     daughter being abused to man and received child pornography
     from man; sentenced to 240 months imprisonment despite claim
     of dependent personality disoder and man had " conned"  defendant);

☆    United States v Laura Shoulders - 14- CR- 8 (W. D. Okla 2014)

     ( female defendant convicted of sexual exploitation of child;
     defendant used her cellular telephone to take three sexually-
     explicit videos of one - year- old girl sent them via text
     message to a man; sentenced to 324 months imprisonment  despite
     calim that man " conviced" defendant to do it and defendant
     took videos at man's request);

☆    United States v Jennifer Mahoney - 12- CR- 319 (D.N.J 2012)

     ( female defendant convicted of sexual exploitation of a child;

     defendant used her cellular telephone to take and email video
of her sexually exploiting a five - year- old child in her care
     and also live- stream video to man; sentenced to 360 months
     imprisonment);

☆    United States v Holli Chapman - 11- CR - 282 ( N. D. Tex2012)

     ( female defendant convicted of sexual exploitation of a child;
     defendant used her cellular telephone to take two sexually
     explicit photographs of her six - year- old daughter being
     sexually abused and sent the photographs via text message to
     a man; sentenced to 360 months imprisonment);

☆ United States v Andrea Mast - 11CR- 37 (W. D. Mich. 2012)

* United States v Andrea Mast - 11-CR-37 (W.D. Mich. 2012)
  ( female defendant convicted of sexual exploitation of a child;
  defendant took sexually explicit  pictures of seven- year- old
  girl and sent them via email to a man; senteced to 360 months
  imprisonment);

* United States v  Mellissa Loman - 13-CR-35 (W.D. Okla. 2013)
  ( female defendant convicted of sexual exploitation of a child;
  used her cellular telephone to take nineteen sexually- explicit
  videos of a minor and sent them via text message to a man in
  exchange for financial benfits; senteced to 360 months imprisonment);

* United States v Adleta, No. 13-CR-74 (M. D.  Fla, 2013), aff'd 2014
  WL 3882497 (11th Cir. Aug 8 2014) (female defendant convicted of
  two counts of sexual exploitation of child; defendant transmitted
  sexually explicit photographs and video of her three-year-old
  daughter and two-year-old son and sent them via email, text message,
  and Skype to a man in North Carolina; defendant licked her daughters
  vagina two or three times; sentenced to 54 years imprisonment).

* United States v Rhonda Michelle Fee, No. 11-15356, Appeal Northern
  District of Alabama, 7:09-cr-00029-LSC-HGD-2, United States v. Fee
  425 Fed. Appx. 847, 2011, US App LEXIS 8854 (11th Cir Ala).
  Fee was convicted of 8 counts of sexually explicit child pronography
  1 count possession.  Fee and Co-defendant had video camera set up
  in the restroom of child and in her bedroom. Both camera's downloaded
  to the Fee's bedroom. Found at the Fee's home was also 8 polaroid's
  of shild'd genitalia. Rhonda used her hands to hold child's genitalia
  while photo's were taken. Sentenced to 8 CONCURRENT terms of imprisonment
  one 120 month to run CONCURRENT ALSO.

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 23 of 49

✫   United States v Solomon-Eaton- 12-CR-352 ( New York)
    ( female defendant convicted of 13 counts of exploitation
    of child;  defendant used her cellular telephone to take
    sexually- explicit photographs of her two- year- old
    daughter photographs include minor daughter with a dildo
    sent photographs to man via text message; senteced to 17 years).

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 24 of 49

To Whom It May Concern:

Hello, my name is Christine Mitham #27701 01. I am currently incarcerated at the Federal Correctional Institution in Aliceville, Alabama. Here is my story.

I was born on May 21, 1981. I was placed in foster care due to the sexual, physical and emotional abuse I went through as a child. I bounced from home to home until adoption, but I had visits with my mother but don't remember them. I remember lots of my childhood my complete memory was that I went to a group home in Talladega. I was about 4 yrs old when I was placed there. It was already troubled or troubled child. I had sex with my brother while I was there and that's when my brother and I ... I told my mother and she didn't ... me. I remember my brother ... he ... watched a girl ... and walked right in when I told him to get out but he did ... I went to the ... I was watching I went and told the ... I get up and went to my mother ... and she told me to go to sleep ... I went back to the ... and I asked my ... why me. He told me that my older sister would get pregnant and my little sister could tell. I did him and we think I went to bed me because I was his side kick and I need to go to him like that I didn't want to go back and see my mother ... I didn't want to be around him. But I went back and my step grandfather ... to reach me and I ran to my mother and told her that I wanted to go back to the group home. She would cry and I told her and I ... And I was a kid when I went back I told I remember of feeling home in Nashville

USCA11 Case: 16-14731   Document: 4   Date Filed: 07/11/2016   Page: 25 of 49

that we were not. They [illegible] us when we did something wrong they threw [illegible] at us. I remember, my brother threw them out in the [illegible] pool and said I did it so she [illegible] neither [illegible] one in the pool and said tell me [illegible] I would eat the bed and they would make me sleep in it so I would eat the covers in my closet so they wouldn't know. My step grandfather was also messing with the hand cup girl next door. The foster home was going to adopt us but changed their mind because they said they would accept my brother and sisters but not me. Thats when we went to Rudge. I went to counseling and I was told [illegible] me to live so I just sat there. I finally did stop talking I was fighting in school and in the grey [illegible] room I was [illegible] several times I was then assigned a [illegible] and I then got a [illegible] and went over there on the weekend and my mom quit so [illegible] me but I didn't [illegible] either. I went to a children's hospital on the meds floor because I called DHL to remove me from a foster home. I stayed there for about 6 months I met my husband when I was 13 and I got pregnant with my oldest son I had a drug problem I [illegible] and became [illegible] married [illegible] but couldn't take my son. They kept my son in the hospital until I went to court I had my daughter at [illegible]. She was born early. My [illegible] was high and I dropped out of school at [illegible] years old I left my family because I couldn't and [illegible] and I didn't know what a family was. I met my [illegible] when [illegible] I [illegible] he was 36 yrs but I looked like I was 13 yrs old. He told me he was in prison but I didn't think to check why. He turned [illegible] fast. He choked me because I told him I didn't want sex. Thats when he told me if I ever told him he began

My body went over he found He would pimp me out and say I was his for him to do what he wanted. If I didn't do what he would beat me or spit me down and when I would be withdrawing from them he would laugh and I did want to be beat. I was doing just to numb the blears. I got pregnant with my youngest Son and he wanted me to beat him something. He cut I send no and thats when he beat me up and put me in the closet for 3 days and gave me bread and water, only. He was so violent every time he came home I was scared of him. He was arrested for Domestic Terrorist Threats, in Desege Co. He said the only was I was leaving him was in a body bag or without me son. I had case called the police when he grabbed me by the neck because I wout wasn't want due to the fact I was pregnant. I had myself in my womb. A report was made but he wasn't arrested. I left him but when I did he would find me and threaten to kill me. So I want back when my daughter was born the abuse got worse. He would threaten to hurt my children I was deathly scared of him because I knew he would make good on his threats. I got arrested at the age of 20 yrs old on 15 counts of production of child pornography on the demand there was pictures where he was violence to me and where I was scared of him. I'm scared to be around men, loud noises and I can't even watch things on T.V. I have nightmares from all the abuse I went through in my life.

Thank you,

Christine Mclim Anderson

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 27 of 49

United States of America,

v.

Christine Staggs McKim

As a first time offender, at the age of 22, when she was arrested. Ms. McKim was sentenced to 450 years for a crime that others are being sentenced to 30 years or less today. (see attached cases of similar nature that received a substantially less sentence.) Ms. McKim has been sentenced to 15 counts all running consecutively which is only found in repeat offenders not a first time offender. Ms. McKim's sentence also does not portray the true circumstances of the crime. She had very poor representation for which she did not have the knowledge and understanding to know this at the time of sentencing and for many years later. Ms. McKim had an 8th grade education along with many mental health issues due to the severe childhood trauma which continued until she was arrested. (attached is a letter written by McKim with details about her childhood and time until she was arrested.) The Court was never presented with the actual history nor all the circumstances surrounding this case. The fear and learned helplessness that was derived from a lifetime of abuse made her mentally incompetent to do anything other than take orders from a man. McKim's co-defendent was so cruel of a man that she stayed scared for her life and her childrens lives. All she knew todo was what he told her to do.  McKim was a victim of Battered Woman Syndrome.

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 28 of 49

Battered Woman Syndrome is a set of psychological and behavior
reactions exhibited by victims of severe long term, domestic
physical and emotional abuse- L. Walker, The Battered Woman
Syndrome (1984). Battered Woman Syndrome is not a mental disease
or a defect; rather, battered woman syndrome is a post- traumatic
stress disorder. Its psychological effects are often similiar
to the effects of imprisonment on kidnap victims and prisoners
of war. Once battered women belive themselves to be helpless
victims of abusive men, they behave like hostages and link
themselves to their captors out of fear that it is the only way
to survive. Battered Women are unable to respond effectively
to violence because they are psychologically trapped in the
violent relationship. Repeated beatings diminish the battered
Woman's motivation to respond and instill in her a negative belief
about the effectiveness of her actions. This "learned helplessness"
keeps the battered woman from leaving her batterer. It is the
task of the sentencing court to determine the credibility and
weight of these issues but McKim's attorney did not present any
of these issues. Futhermore, there are police reports and
Department of Correction files on her co- defendant to prove
how cruel of a human that he is. Our own law recognizes that for
a substantial period of time a brutal man may subject women to
severe psychological stress such that they "fail to excape or cry
out for help  when in public place because they lacked sufficient
egostrength, self- confidnce and will power when they were in the
shadow of the mans complete domination over them"

United States v Winters, 729 f2d 602, 605 (9th Cir 1984)
If the Court would have had knowledge of the severe trauma
that McKim has had her entire life the outcome of her
sentencing would have been different.

Due to the extreme sentence that McKim had been given
shedid not know how to handle it. She acted out in anger
until she was able to get help for the first time in her
life to process her emotions and start working toward
positive life skills. She has accomplished many things
while being incarcerated to become a productive member of
society. She has received her GED and started college
courses. McKim has also taken many classes on trauma and
anger ( See attached). She is just now has the maturity,
emotional and educational level to assit with the
presentation of her case. In an accurate and semi professional
manner.

January 7, 2016

From: Janet Byrd, Psy.D., Resolve Program Coordinator, FCI Aliceville

Subject: Inmate McKim, Christine #27201-001

This letter is to inform you that inmate McKim, Christine #27201-001, is currently participating in the Resolve Program at the Federal Correctional Institution in Aliceville, Alabama. The Resolve Program is a voluntary non-residential trauma treatment program which focuses on helping female inmates, who have been victims of traumatic experiences to learn to cope with the past traumas in order to move beyond it and live a life free of criminal activity, violence and substance abuse. It also emphasizes the importance of building a healthy support community, and assists inmates in managing mental health and/or substance abuse problems. It takes a minimum of nine months to complete the program.

Inmate McKim has participated in the program with no issues and has appears to demonstrate an active commitment to learning the skills she needs in order to think rationally and make better choices in her future. She has been a consistent participant in all facets of the program, which includes a psycho-educational group she completed at FCI Tallahassee and therapy groups based on treatment modalities which have been shown to be evidence-based practices. She appears to have been making positive strides in her effort to internalize the Resolve Program's philosophy.

In addition, since inmate McKim's incarceration in the BOP in 2009, she has actively sought psychological counseling to address both her trauma issues, as well as her own criminal behaviors, which has been well documented. This letter is meant for the sole purpose of advising as to her efforts in addressing psychological issues.

If you have any questions about inmate McKim's efforts, please feel free to contact me at (205) 373-5195.

**Bureau of Prisons**                    **SENSITIVE BUT UNCLASSIFIED**
**Psychology Services**
**Resolve Program**

| | |
|---|---|
| **Inmate Name:** MCKIM, CHRISTINE STAGGS | **Reg #:** 27201-001 |

| | | | |
|---|---|---|---|
| **Date of Birth:** 05/21/1984 | **Sex:** F | **Race:** WHITE | **Facility:** ALI |
| **Open Date:** 12/09/2015 | **Closed Date:** | **Status:** Active | **Discussed:** Yes |

**PGI Title:** Phase II: Dialectical Behavior Therapy

**Status:** Active          **Last Updated:** 12/09/2015     **Last Provider:** Byrd, Janet PsyD

**Problem:** The inmate has a diagnosis of Borderline Personality Disorder or associated features as demonstrated by

**Goal:** Decrease behaviors that threaten life, interfere with therapy, and decrease quality of life while increasing skills that replace ineffective coping behaviors

**Interventions:** - Attend all scheduled group sessions & complete all assignments
- Demonstrate mindfulness
- Demonstrate distress tolerance and regulate emotions
- Practice interpersonal effectiveness
- Demonstrate self-management

**Progress Notes:**

Displays Conceptual Understanding Only          **Date:** 01/04/2016  **Provider:** Byrd, Janet PsyD

Inmate MCKIM has been a fair participant in the Dialectical Behavioral Therapy (DBT) group of Phase II up to the present time, which was expected due to the fact she joined into a group of people who had participated in Phase I together. She verbalizes a desire to learn how to stop engaging in self-destructive behaviors, such as self-mutilation and avoidance as a means of dealing with uncomfortable emotional situations. She has verbalized a desire to self-improve and be able to have more stable interpersonal relationships and effectively manage her anxiety. Her anxiety appears to be due to issues related to abuses, which occurred during her childhood. As a result, she tends to manifest her anxiety through emotional detachment symptoms and anger, which has hindered her ability to interact rationally in her relationships, as well as not run from a relationship when even minor issues arise.

She has been in attendance and appears highly invested in self-improvement and the treatment process. She has been trying to be a supportive group participant. She has expressed her desire to work with the Resolve Program Coordinator in trying to understand the connection between her traumatic experiences and her mental illness/substance abuse in her effort to ensure she is able to cope with future experiences without engaging in further self-destructive behaviors. Her continued participation in DBT should assist in these areas.

**SENSITIVE BUT UNCLASSIFIED**

## Federal Bureau of Prisons
## Psychology Data System

**Date-Title:** 12-20-2013 - Clinical Intervention - Treatment Plan
**Reg Number-Name:** 27201-001 - MCKIM, CHRISTINE S.
**Author:** TARA MEISNER, M.A., PSYCHLGY PREDOCTORAL INTERN
**Institution:** TAL - TALLAHASSEE FCI

### Diagnostic Impressions:

**AXIS I:** Posttraumatic Stress Disorder - Chronic without Delayed Onset

**AXIS II:** None

### Treatment Plan:

Problem: Inmate McKim (27201-001) requested time in the Personal Growth Room to help with managing emotions.

Below are the Inmate's goals:

"To deal with and overcome stress, guilt and denial."

"To learn how to effectively communicate."

"To learn how to be assertive."

Interventions: Inmate McKim will spend six 60 minute sessions in the Personal Growth Room. She has selected the following materials to help her accomplish her stated goals:

1. Resolving Your Past (EM30-AT)
2. How to Handle Conflict and Confrontation (CO03)
3. Understanding Anxiety and Worry (ESI08)
4. Understanding Guilt (ESI11)
5. Self-Discipline and Emotional Control Vol 1(ESI19)
6. Courage to Heal (EM37-AT)

### Termination Summary: (02-26-2014)

Inmate McKim attended all 6 of her scheduled sessions in the Relaxation Room. She reported that she enjoyed her time in the room and will continue to work on issues related to anxiety during individual therapy.

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

## Federal Bureau of Prisons
## Psychology Data System

**Date-Title:** 08-20-2009 - Intake Screening
**Reg Number-Name:** 27201-001 - MCKIM, CHRISTINE S.
**Author:** MICHAEL T. PLASAY, CH PSYCH
**Institution:** TAL - TALLAHASSEE FCI

### TREATMENT/MENTAL HEALTH HISTORY:

Inmate **MCKIM** reported the following:

**In-Patient:** age 13: homicidal/suicidal thoughts, 6 months.

**Out-Patient:** Counseling off and on since age 4.

**Suicide Attempt:** 8 attempts: each time attempted OD. First age 14, last time, age 21.

### ABUSE HISTORY:

Inmate MCKIM reported the following:

**Sexual Abuse:** step father when 2.
brother when 9-13, pretty much every dayover years
step grandfather at 13 couple of times
boyfriend in last six years multiple times.

**Physical Abuse:** see above
foster parents

### MENTAL STATUS:

During the screening interview no mental status items were noteworthy.

Her psychological stability for custody is judged to be **FAVORABLE** .

### DRUG ABUSE HISTORY:

Inmate MCKIM reports a history of substance abuse.  Her primary drug of addiction/abuse is **POLYSUBTANCE ABUSE** . She is interested in drug abuse treatment.

### PROGRAM TREATMENT RECOMMENDATIONS:

No programs/treatment are recommended at this time.

Inmate MCKIM reported an interest in participating in programs/treatment.

### COMMENTS:

Inmate is a 25 year old white female serving a 450 year sentence for production of child pornography. She

USCA11 Case: 16-14731   Date Filed: 07/11/2016   Page: 34 of 49   Document: 4

was advised verbally of the limits of confidentiality. There is no indication of prior offenses. She indicated she is divorced with four children, ages 9, 8, 4, and 3. She anticipates regular written contact with her father, who is also incarcerated.

She reported at age 13 being hospitalized for six months for having homicidal/suicidal thoughts. She could not remember the diagnosis at the time. She does recall that she was initially placed on zoloft for three months before she was hospitalized. She reported outpatient counseling off and on since the age of 4, and was initially sent to counseling because she had "issues with being touched by people."

She reported 8 prior suicide attempts beginning at age 14 and ending at age 21. Each time was described as an unsuccessful od on tylenol. Usually, the event involved doing it in front of someone, or calling her boyfriend, or having someone walk in on her after being passed out. Only one resulted in a trip to the ER.

She reported being a victim of sexual abuse/assault. Please read additional noted for details.

She reported using a number of substances. She began using heroin at age 14. Her preferred method is injection, and reported a daily use beginning by age 15 to the time of incarceration. She reported similar history for cocaine, mixing the two together and using on daily basis. She began using methamphetamine at age 19. She reported a 3-4 time a month habit. She reported a history of using xanax and klonopins beginning at age 20 on a daily basis (unprescribed). She denied any history of serious head injury or current physical health problems.

Inmate interested in multiple programs, including counseling, drug rehab, and trauma. She was instructed on how to contact psychology services in the future routinely, as well as, in the event that she began to feel in crisis.

**SENSITIVE BUT UNCLASSIFIED**

UNITED STATES of AMERICA

V.

McKim

case # 2:08-cr-00313-IPJ-RRA-2

*****************************************************************

MOTION FOR ALL PROCEEDINGS TO REMAIN SEALED

*****************************************************************

Comes now, Christine Staggs McKim which respectfully requests that all proceedings past, present and future remain sealed due to the nature of the offense. This requests has been honored on all the past proceedings and is requested to remain in effect for all present and future proceedings.

Christine McKim II 27201-001
Christine McKim

Page: 35 of 49     Date Filed: 07/11/2016     Document: 4     USCA11 Case: 16-14731

Case 2:16-cv-08033-AKK *SEALED* Document 3 Filed 06/23/16 Page 1 of 10

FILED
2016 Jun-23 PM 02:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRCIT COURT

Northern DISTRICT OF Alabama

Christine Mckim

Petitioner

FILED

2016 JUN CASE NO. 34

v.                                        2:08-cr-00313-IPJ-RRA -2

THE UNITED STATES OF AMERICA       U.S. DISTRICT COURT
                                   N.D. OF ALABAMA

SEEKING A SENTENCE REDUCTION BASED ON
JOHNSON V. UNITED STATES AND PURSUANT TO
28 U.S.C.§2255

COMES NOW, Christine Mckim , pro se, seeking a
sentence reduction based on Johnson v. United States, 135
S.Ct. 2551 (2015) and pursuant to 28 U.S.C. §2255.

Successive Habeas petitions cannot statutorily get relief unless
a new rule is declared retroactive by the Supreme Court, and
Congress has imposed a one-year limitation on successive
petitions. Individuals who have never filed a 28 U.S.C. §2255
and are outside the standard time frame are also held to the
one-year limitation as set forth by Congress. Dodd v. U.S., 545
u.s. 353, 357 (2005). These cases are to be pursuant to 28 U.S.C.
§2255 (h)(2), "a new rule of constitutional law, made retro-
active to cases on collateral review by the Supreme Court, that
was previously unavailable." Based on the writings of late
Justice John Marshall Harlan II, the Court has decided over
time that new "substantive" constitutional rules should apply
retroactively to everyone, even "final cases". In Welch v.
United States, (No. 156418) (S. Ct. April 18, 2016), the
Supreme Court held that its Johnson v. United States, 135
S. Ct. 2551 (2015) decision is retroactively applicable on
collateral review. The Johnson case was issued on June 26,
2015. This is filed within the one-year time limit and is
therefore a timely motion.

An applicant seeking a Certificate of Appealability in a
§2255 proceeding must make "a substantial showing of the
denial of a constitutional right". §2253(c)(2). That standard

-1-

is met when "reasonable jurists could debate whether..... the
petition should have been resolved in a different manner".
Slack v. McDaniel, 529 U.S. 473, 484.

New constitutional rules of criminal procedure generally do not
apply retroactively to cases on collateral review, but new
substantive rules do apply retroactively. Teague v. Lane,
489 U.S. 288, 310; Schriro v. Summerlin, 542 U.S.348, 351.
Substantive rules alter "the range of conduct of the class of
persons that the law punishes", id., at 353. Procedural rules,
by contrast, "regulate only the manner of determining the
defendant's culpability." Under this framework, Johnson is
substantive.

Under Teague, as a general matter, "new constitutional rules of
criminal procedure will not be applicable to those cases which
have become final before the new rules are announced." 489 u.s.,
at 310. Teague and its progeny recognize two categories of
decisions that fall outside the general ban on retroactivity for
procedural rules. First, "new substantive rules generally apply
retroactively." Schriro v. Summerlin, 542 U.S. 348, 351 (2004);
See Montgomery v. Louisianna, 577 u.s. __, __ (2016); Teague,
supra, at 307, 311. Second, new "watershed rules of criminal
procedure, which are procedural rules implicating the fundamental
fairness and accuracy of the criminal proceding, will also have
retroactive effect." Saffle v. Parks, 494 u.s. 484, 495 (1990);
see Teague, supra, at 311, 313. The Teague framework creates a
balance between first, the need for finality in criminal cases,
and second, the countervailing imperative to ensure that criminal
punishment is imposed only when authorized by law.

It is undisputed that Johnson announced a new rule. See Teague,
supra, at 301 ("A case announces a new rule if the result was
not dictated by precedent existing at the time the defendant's
conviction became final") . The question is whether that new
rule falls within one of the two categories that have retroactive
effect under Teague. Johnson does not fall into the limited
second category for watershed procedural rules, as held by the
courts. The United States contends, instead, that Johnson falls

-2-

into the first category because it announced a new substantive
rule.

Before Johnson, the residual clause could cause an offender to
face a prison sentence of at least 15 years instead of 10
maximum. Since Johnson made the residual clause invalid, it can
no longer mandate or authorize any sentence. By the same logic,
Johnson is not procedural, since it had nothing to do with the
range of permissible methods a court might use to determine
whether a defendant should be sentenced under the Act; see
Schriro, supra, at 353.

By striking down the residual clause as void for vagueness,
Johnson changed the substantive reach of the Armed Career Criminal
Act, altering "the range of conduct or the class of persons the
Act punishes." Schriro, supra, at 353. Johnson establishes that
"even the use of impeccable fact finding procedures could not
legitimate" a sentence based on that clause. United States v.
United States Coin and Currency, 401 U.S. 715, 724 (1971).

Federal law makes the possession of a firearm by a felon a crime
punishable by a prison term of up to 10 years, 18 U.S.C. §922(g),
924(a)(2), but the Armed Career Criminal Act of 1984 increases
that sentence to a mandatory 15 years to life if the offender
has (3) or more prior convictions for a "serious drug offence"
or a "violent felony", §924(e)(1). The definition of "violent
felony" includes the residual clause, covering any felony that
"otherwise involves conduct that presents a serious potential
risk of physical injury to another." §924(e)(B)(ii). In
Johnson v. United States, 576 u.s. ____, it was held the clause
was unconstitutional under the void-for-vagueness doctrine.

Johnson has been applied to 18 U.S.C.§16(b), a statutory provision
that also provides a generic definition of "crime of violence",
a similar residual clause. See Gonzalez-Longoria, 813 F. 3d 225
(5th Cir. 2016). Furthermore, the language in §16(b) is identical
to the residual clause of section 924(c)(3)(B). See United States
v. Edmonson, 2015 U.S. Dist. LEXIS 171007 (D. Md. 2015), holding

-3-

the residual clause under Section 924(c)(3)(B) was unconstitutional post-Johnson.

Sentence enhancements pursuant to 18 U.S.C.§§924(e), 924(c); 3559(c)(2)(F)(ii); and 8 U.S.C. §1101(a)(43)(F) are also applicable and affected by the Johnson ruling.

The Johnson standard also applies to individuals who were sentenced as a career offender based on one or more prior convictions that fit the "residual clause" of the career offender guideline. According to 4B1.1(a) of the sentencing guidelines: (a) A defendant is a career offender if (1) the defendant was at least 18 years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least (2) prior felony convictions of either a crime of violence or a controlled substance offense. The guidelines then go on to define what "crime of violence" means in section 4B1.2(a): (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. The "residual clause" of the career offender guideline of 4B1.2(a)(2) states "otherwise involves conduct that presents a serious potential risk of physical injury to another." A conviction that falls under the residual clause is no longer qualifying in light of Johnson.

Imposing an increased sentence under ACCA's residual clause violates due process. The government violates the Due Process Clause when it takes away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. Kolender v. Lawson, 461 u.s. 352, 357-358. Courts must use the "categorical

-4-

approach" when deciding whether an offense is a violent felony,
"in terms of how the law defines the offense and not in terms
of how an individual offender might have committed it on a
particular occassion." Begay, supra, at 141.

The prohibition of vagueness in criminal statutes "is a well-
recognized requirement, consonant alike with ordinary notions
of fair play and the settled rules of law", and a statute that
flouts it "violates the first essential of due process".
Connally v. General Constr. Co., 269 u.s. 385, 391 (1926).
The principles apply not only to statutes defining elements of
crimes, but also to statutes fixing sentences. United States
v. Batchelder, 442 u.s. 114, 123 (1979).

"We are convinced that the indeterminacy of the wide-ranging
inquiry required by the residual clause both denies fair notice
to defendants and invites arbitrary enforcement by judges.
Increasing a defendant's sentence under the clause denies due
process of law." (Justice Scalia, dissenting, Johnson v.
United States, 576 u.s. ___ (2015) ).

Two features of the residual clause conspire to make it
unconstitutionally vague. In the first place, the residual
clause leaves grave uncertainty about how to estimate the risk
posed by a crime. It ties the judicial assessment of risk to
a judicially imagined "ordinary case" of a crime, not to
real-world facts or statutory elements. At the same time, the
residual clause leaves uncertainty about how much risk it
takes for a crime to qualify as a violent felony. It is one
thing to apply an imprecise "serious potential risk" standard
to real-world facts; it is quite another to apply it to a
judge-imagined abstraction. By asking whether the crime
"otherwise involves conduct that presents a serious potential
risk", moreover, the residual clause forces courts to interpret
"serious potential risk" in light of the four enumerated crimes-
burglary, arson, extortion, and crimes involving the use of
explosives. These offenses are "far from clear in respect to
the degree of risk each poses." Begay, 553 u.s.; at 143. By

-5-

combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbirariness than the Due Process Clause tolerates. (Justice Scalia, dissenting, Johnson v. United States, 576 u.s. ___ (2015) ).

The residual clause requires application of the "serious potential risk" standard to an idealized ordinary case of the crime. Because "the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect", this abstract inquiry offers significantly less predictability than one "that deals with the actual, not with an imaginary condition other than the facts." International Harvester Co. of America v. Kentucky, 234 u.s. 216, 223 (1914). (Justice Scalia, dissenting, Johnson v. United States, 576 u.s. ___ (2015) ).

WHEREFORE, in light of the Johnson case being applicable on collateral review; Petitioner respectfully requests this Court to vacate, set aside, or correct sentence and be resentenced accordingly pursuant to the changes set forth by Johnson v. United States.

Respectfully submitted this $\partial O$ day of $\underline{\text{June}}$ , 2016.

Christine McKim
Inmate No. $\underline{27201 \cdot 001}$

-6-

United States

v.                                      Case number: 2:08-cr-00313-
                                                     IPJ-RRA-2

Christine Mckim

☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆
Memorandom Attachment to 2255 Johnson Supplement to 2255
☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆☆

Comes now, Christine Mckim, pro se. Mckim was enhacement
as a repeat offender by 5 points. Pursant to 4B1.5 repeat and
dangerous sex offense against minor if the defendant's instant
offense of conviction is a covered sex crime. Counts 1-21 do not
meet the requriements for the 5 point enhancement that was given
for pattern of activity. The Johnson case has addressed enhancements
for priors and Mckim has NONE. There has not been a pattern
of any activity. Therefore her offense level that is a 51 is
incorrect. Mckim did not have any prior sex offenses and it was
noted in her PSI that this did not apply to her yet she was still
given these points. The Johnson descision, has changed how the
courts should look at each case. Johnson conclueded that the
process of determining what is embodied in the ordinary case.
rather than " real world facts" is factually flawed rending
enhacements uncontitutionally vauge. " Grave uncertainty"
surrounds the method of determing the risk posed by Judicially
imagined ordinary case. Johnson @2257. The residual Clause offers
no reliable way to choose between competing accounts of what
"ordinary " involves," ID 2258. The Johnson court considered
and rejected different ways that a court might envision the
hypothetical ordinary case since the statute offers no guidance

Specifically, the court explained that a statistical analysis
of reported cases, surveys, expert evidence, google and get *guT cm*
instinct are all equalley unreliable in determing the ordinary
case. ID@ 2257,quoting United States v Mayer,560 f.3D 948 952
(9th Cir.09). Mckim's counts were also "Grouped" into 6 groups
but yet sentenced to each individual count. This is another
enhancement that is a direct violation of her rights. It is
unconstitutionally vage as to the reason for the groups other
than an additional enhancement that should be  only applied
to a repeat offender just like the pattern of activity enhancement
Johnson has concluded that the statistical  and "common sense"
methods have "failed to establish any generally applicable test
that prevents the risk comparison requried by the risidual clause
from delving into guess work and intuition. "Johnson @ 2259
( referring to  Chambers v United states, 555 US 122 (2009),
and Sykes v United states, 564 US 1 (2011). This flaw alone
establishes the Risidual clause's and enhancements, unconstitutionally
vauge. This also falls into  Double Jeopardy and multplicity.
All of these enhancements that are vauge and unconstitutionally
vague do not apply to Mckim and are the only way she was given
an unjust sentence of  450 years for a frist time offender.
Mckim' was also given a 4 point enhancement for sdo which this
also fits unto the unconstitutionally vagueness that the Johnson
case has referenced.  Again gut insticts are flawed and are
equally unreliable in determing what is and is not in this catagoory.
Mckim had no control or willingness in any way of the situations
that have been charged against her. Mckim was forced to do what
she was told. Her co-defendant had made serval threats  to harm

her and her children. He was arrested on one instince. Under
the 18 U.S.C. 924 (c) (3) (A) is consider " force clause" (A)
a felony that " has as an element that use, attempted use, or
threatened use of physical force against the person or property
of another," or (b) a felony " that by its nature involves a
substantial risk that physical force against the person or
property of another may be used in the course of committing
the offense 18 U.S.C 924 (c)(3) (a) is refered to as the force clause
whereas 18 U.S.C 924 (c) (3) (B) is referred to as the "residual
clause". United States v Brown (13-1706) (2nd Cir June 14, 2016)
At sentencing the district court sentenced Brown to 60 years
imprisonment ( three 20 year sentence to be run consecutivly)
The court noted Brown allegedly " destroyed the lives of 3
specific children". The children in Browns case had " no knowledge
of being victized by Brown." So there was no"negative impact".
The court concluded that it was appropriate to remand for resentecing
to ensure that the sentence is not based on erroneous understanding
of the facts. Although the court expressed no definitive views
on the subtantivie reasonableness of the original sentence
imposed, the court respectfully suggest that the district court
consider whether an effective life sentence is warranted in this
case. Mckim's enhancements should not include the 5 points for
pattern of activity nor the 5 units for the groups. She should
also not have the 4 point enhancement for sado which she was
forced into. Mckim sentence has been run consective to be a
life sentence without the merits to make this even possible .

## CERTIFICATE OF SERVICE

I, Christine McKim , do certify that the attached
motion was placed in the prison mailbox from Aliceville F.C.I
on June 20, 2016 and sent to District Court Clerk
35203 Birmingham Al 1729 5th Ave . I declare under the
penalty of perjury that all of the statements made in this
."Certificate of Service" are true and correct.

So served, Christine McKim 2201-001
So executed Christine McKim . June 20th, 2016

27201-001
Christine Mckim
Federal Correctional Instiution
PO BOX 4000 Aliceville
Aliceville, AL 35442
United States

Page: 45 of 49    Date Filed: 07/11/2016    Document: 4    USCA11 Case: 16-14731

FILED

2016 Jun-24  PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

CHRISTINE STAGGS MCKIM,       )
     Petitioner,       )
                       )
vs.       )       **2:16-cv-8033-AKK**
                       )       **UNDER SEAL**
UNITED STATES OF AMERICA,  )
     Respondent.       )

## ORDER

The court has for consideration Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255. Doc. 1. Petitioner's motion to seal the proceedings in this case, doc. 2, is **GRANTED**. The motion to vacate is based on Petitioner's contention that her trial counsel provided ineffective assistance by, among other things, failing to file an appeal, and on her contention that her sentence of 5,400 months is cruel. Doc. 1 at 4 – 8, 14 – 21. Petitioner's motion is untimely because under 28 U.S.C. §2255(f), "[a] 1-year period of limitation shall apply to a motion under this section." The court issued the judgment in Petitioner's case on July 20, 2009. *See* Crim. Doc. 37.[1] Petitioner did not file an appeal, albeit because of her contention that she could not reach her counsel. Doc. 1 at 4 – 6, 14 – 21. Instead, she waited until April 29, 2016, almost seven years later, to file this motion. *See* doc. 1.

---

    [1]Crim. Doc. refers to the docket entries in the underlying criminal case, *United States v. McKim*, 2:08-cr-313-IPJ.

USCA11 Case: 16-14731   Document: 4   Date Filed: 07/11/2016   Page: 47 of 49

Although Petitioner excuses her delay by claiming she tried unsuccessfully to reach her lawyer to file an appeal, as she notes in her motion, she abandoned those efforts in January 2010 by requesting a new lawyer, *see* Crim Docs. 43 and 44, and when the court denied her request for a new lawyer, she decided not to ask anyone else to help her with her case "due to the type of crime it was." Doc. 1 at 11.   In other words, there is nothing in the motion that would warrant the extension of the one year statute of limitations to April 2016. Accordingly, because Petitioner filed this motion well outside the one year period of limitation provided by 28 U.S.C. §2255(f), Petitioner's motion is **DENIED**.[2]

Done this the 24th day of June, 2016.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE

---

[2]On June 23, 2016, Petitioner filed a second motion to reduce her sentence pursuant to *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551 (2015). *See* doc. 3. This motion is a "second or successive" motion under § 2255, over which the court lacks subject matter jurisdiction until the court of appeals authorizes the filing of the motion.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended § 2255 to limit the filing of "second or successive" motions attacking federal convictions and sentences. Subsection (h) of § 2255 now requires that "[a] second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals. . . ." Because Petitioner has not alleged or shown that the court of appeals has authorized her to file this successive motion, the court does not have jurisdiction over this matter. *See, e.g., United States v. Holt*, 417 F.3d 1172, 1175 (11th Cir. 2005) ("Without authorization [from the court of appeals], the district court lacks jurisdiction to consider a second or successive petition.") (citation omitted). Therefore, the court **DISMISSES** the motion without prejudice for want of subject matter jurisdiction.

2

FILED
2016 Jul-01 PM 12:45
U.S. DISTRICT COURT
N.D. OF ALABAMA

USCA11 Case: 16-14731    Document: 4    Date Filed: 07/11/2016    Page: 48 of 49

DATE: June 28, 2016

FILED

2016 JUN 30 A 10:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

CASE: 2:08-CR-00313-
IPJ-RRA
: 2:16-CV-8033-AKK

Christine McKim, Petitioner

United States

<u>Notice of Appeal</u>

Comes Petitioner Christine McKim, appearing Pro Se, and timely files her Notice of Appeal of the Order denying and dismissing McKims 28 USC 2255 to vacate, Set aside or Correct Sentence by a Person in Federal Custody.

Respectfully Submitted

Christine McKim
Christine McKim

# Certificate of Service

I declare under penalty of perjury
that the foregoing is true and correct
and the NOTICE of Appeal was
placed in the prison mailbox
on June 28, 2016.

Christine McKim 27201-001

Sent to:
US District Court
1729 5th Ave N
Birmingham, AL 35203


From:
Christine McKim 27201-001
Federal Correction Inst
PO Box 4000
Aliceville AL 35442